**777 L.L.P.**

v.

**LUZERNE COUNTY TAX CLAIM BUREAU.**

v.

**Vito Mannino, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 9, 2015.

Decided March 30, 2015.

Andrew J. Katsock, III, Wilkes–Barre, for appellant.

Thomas Mosca, Kingston, for appellee 777 L.L.P.

BEFORE: BERNARD L. McGINLEY, Judge, PATRICIA A. McCULLOUGH, Judge, and JAMES GARDNER COLINS, Senior Judge.

OPINION BY Judge McCULLOUGH.

Vito Mannino (Mannino) appeals from the May 6, 2014 order of the Court of Common Pleas of Luzerne County (trial court) that vacated its April 16, 2014 order denying and dismissing 777 L.L.P.'s petition to set aside the judicial tax sale and granted the petition.

### Facts/Procedural History

777 L.L.P. is a limited liability partnership with its principal place of business located at 777 South Franklin Street, Wilkes–Barre, Pennsylvania. 777 L.L.P. owns a property located at Horton and Barney Street, Wilkes–Barre, Pennsylva-

nia (Property). The Luzerne County Tax Claim Bureau (Bureau) conducted an up-set tax sale of the Property due to delinquent real estate taxes. Because the up-set price[1] was not met at the upset tax sale, the Bureau filed a petition with the trial court seeking permission to conduct a judicial tax sale pursuant to section 610 of the Real Estate Tax Sale Law (Law).[2] Prior to the judicial tax sale, the trial court granted the Bureau's motion for publication of notice of the judicial tax sale. The judicial tax sale was conducted on August 23, 2012, at which time Mannino purchased the Property. (Trial court op. at 1–2.)

On November 16, 2012, 777 L.L.P. filed a petition to set aside the judicial tax sale of the Property. On August 28, 2013, the trial court issued a rule to show cause why the relief requested in the petition to set aside the judicial tax sale should not be granted. On February 4, 2014, the parties appeared before the trial court and presented a joint request to have the matter determined upon briefs and the deposition transcript of Nadine Emel (Emel), the Bureau's representative, which the trial court granted. (Trial court op. at 1–2.)

In her January 10, 2014 deposition, Emel testified that she is an employee of Northeast Revenue Service (Northeast Revenue), the entity that assumed management of the Bureau's office in May 2010, and she was employed by the Bureau for the preceding fifteen years. Emel stated that Northeast Revenue attempted to serve 777 L.L.P. with the notices of tax delinquency and the notices of the tax sales by certified mail and through sheriff's personal service, but neither method was successful. Emel testified that notice was sent to 777 L.L.P. at 72 Park Avenue, Wilkes–Barre, Pennsylvania, the address of record with the tax assessment office. She explained that service was made at this address on the widow of the former owner of 777 L.L.P., who sold the business in 2007. Emel testified that after Northeast Revenue received this return of service, Northeast Revenue determined that additional efforts needed to be made in order to locate 777 L.L.P.'s correct address. (Reproduced Record (R.R.) at 79a–80a, 83a, 115a, 138a–40a.)

Emel stated that Northeast Revenue attempted to personally serve 777 L.L.P. through sheriff's service at "77" South Franklin Street, Wilkes–Barre, Pennsylvania, the address that was on file with the Pennsylvania Department of State, but was again unsuccessful. Emel testified that in attempting to locate 777 L.L.P.'s correct address, Northeast Revenue searched the dockets and indices of the county tax assessment office by using only the property identification number (PIN) for the Property. She stated that it is Northeast Revenue's policy to search only by PIN for each property. Emel also stated that the Bureau did not search the current telephone directory for the county when attempting to find 777 L.L.P.'s correct address. Emel noted that both the Recorder of Deeds Office and the Prothonotary's Office had the same Park Avenue

---

1. The upset price is "the sum of (a) the tax liens of the Commonwealth, (b) the amount of the claim absolute and interest thereon on which the sale is being held, (c) the amount of any other tax claim or tax judgment due on such property and interest on the judgment to the date of sale, (d) the amount of all accrued taxes including taxes levied for the current year, whether or not returned, a record of which shall be furnished to the bureau by tax collectors, receivers of taxes and taxing districts, (e) the amount of the municipal claims against the property, and (f) the record costs and costs of sale...." Section 605 of the Real Estate Tax Sale Law, Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. § 5860.605.

2. 72 P.S. § 5860.610.

address of record that the Bureau had on record for 777 L.L.P. (R.R. at 85a–86a, 96a, 122a, 124a.)

Emel further testified that Northeast Revenue never used 777 L.L.P.'s name but only the PIN for the Property for all of its search methods in its attempt to find 777 L.L.P.'s correct address. She acknowledged that a subdivision map of the Property recorded in the Recorder of Deeds Office on March 6, 2009, contained the 777 South Franklin Street address and stated that Northeast Revenue had not searched the records in the Recorder of Deeds Office. Emel testified that the Bureau's certificate of taxes for 777 L.L.P. and a November 19, 2012 printout from Northeast Revenue's website both listed the 777 South Franklin Street address for 777 L.L.P., and she admitted that the 2009 subdivision map containing the 777 South Franklin Street address for 777 L.L.P. also was in the Bureau's own file. Emel stated that Northeast Revenue never attempted to serve 777 L.L.P. at the 777 South Franklin Street address. (R.R. at 86a–88a, 89a–91a, 106a, 113a–14a.)

Emel testified that Northeast Revenue complied with statutory posting and publication requirements. Emel further testified that the tax assessment office is responsible for updating property owners' addresses and that a property owner may notify the tax assessment office regarding an address change. (R.R. at 124a, 126a, 128a–30a, 135a.)

On April 16, 2014, the trial court issued an order denying and dismissing the petition to set aside the judicial tax sale. The next day, 777 L.L.P. filed an unopposed motion for reconsideration and sought permission to file an untimely brief, which the trial court granted. By order dated May 6, 2014, the trial court vacated its April 16, 2014 order and granted 777 L.L.P.'s petition to set aside the judicial tax sale. (Trial court op. at 2; R.R. at 218a–20a.)

Mannino appealed from this order and the trial court issued its opinion in support of its order granting 777 L.L.P.'s petition. The trial court concluded as follows:

[T]he Bureau not only failed to conduct certain required notification efforts i.e. use of a telephone directory search, but as importantly, failed to adequately examine records which clearly existed at the Luzerne County Recorder of Deeds, primarily, the subdivision map recorded on March 6, 2009. It is additionally obvious that the Bureau failed to adequately examine records/information in [its] possession to determine [777 L.L.P.'s] appropriate mailing address. Indeed, the document identified as a certificate of taxes clearly sets forth [777 L.L.P.'s] address as 777 South Franklin Street, Wilkes–Barre, Pa. Furthermore, as indicated in the factual summary, the Bureau's web site [sic] identifies [777 L.L.P.'s] address as 777 South Franklin Street, Wilkes–Barre, Pa.

(Trial court op. at 11.)

The trial court also stated that the Bureau's failure to search records using 777 L.L.P.'s name instead of only the Property's PIN provided further proof that the Bureau did not exercise reasonable efforts in attempting to locate 777 L.L.P.'s correct address. The trial court noted Emel's admission that the Bureau would have found the correct address if it had conducted a search using 777 L.L.P.'s name instead of merely the PIN of the Property. The trial court found nothing of record that suggested "employing the name of the taxpayer or tax paying entity in conducting the required records search is onerous or unreasonable." (Trial court op. at 12.)

On appeal to this Court,[3] Mannino argues that: (1) the trial court erred or abused its discretion in applying the Law to the facts; and (2) the trial court erred in failing to conduct an evidentiary hearing.

## Discussion

An upset tax sale may be conducted when a property owner is delinquent in paying taxes. Section 601 of the Law, 72 P.S. § 5860.601.[4] When the upset price is not reached at the sale, the Bureau may petition the court of common pleas to sell the property free and clear of all tax and municipal claims, liens, mortgages, charges, and estates at a judicial tax sale. Section 610 of the Law, 72 P.S. § 5860.610. Upon receiving the petition, the common pleas court shall issue a rule upon all interested parties to show cause why the subject property should not be sold free and clear of all tax and municipal claims, liens, mortgages, charges, and estates. *Id.*

Section 611 of the Law provides the service requirements for the rule to show cause in a judicial tax sale as follows:

Service of the rule shall be made in the same manner as writs of scire facias[5] are served in this Commonwealth. When service cannot be made in the county where the rule was granted, the sheriff of the county shall deputize the sheriff of any other county in this Commonwealth, where service can be made. If service of the rule cannot be made in this Commonwealth, then the rule shall be served on the person named in the rule by the sheriff, by sending him, by registered mail, return receipt request-

3. "Our scope of review in tax sale cases is limited to a determination of whether the trial court abused its discretion, rendered a decision which lacked supporting evidence, or clearly erred as a matter of law." *In re Sale No. 10*, 801 A.2d 1280, 1282 (Pa.Cmwlth. 2002) (citation and quotations omitted).

4. Section 601 of the Law provides in relevant part:

(1) The bureau shall sell the property if all of the following are met:
(i) A tax claim has become absolute.
(ii) The property has not been discharged from the tax claim nor removed from sale under section 603 [of the Law]; or a tax judgment has been entered against the property prior to January 1, 1948, and is unsatisfied, and a sale of the property has not been stayed by agreement under this article.
(iii) The property is not in the possession of the sequestrator.
72 P.S. § 5860.601.
Section 603 of the Law states in pertinent part:
Any owner ... may, at the option of the bureau, prior to the actual sale, (1) cause the property to be removed from the sale by payment in full of taxes which have become absolute and of all charges and interest due on these taxes to the time of payment, or (2) enter into an agreement, in writing, with the bureau to stay the sale of the property upon the payment of twenty-five per centum (25%) of the amount due on all tax claims and tax judgments filed or entered against such property and the interest and costs on the taxes returned to date, as provided by this act, and agreeing therein to pay the balance of said claims and judgments and the interest and costs thereon in not more than three (3) instalments all within one (1) year of the date of said agreement....
72 P.S. § 5860.603.

5. "Scire facias" literally means "you are to make known, show cause." BLACK'S LAW DICTIONARY 1547 (10th ed. 2014). A writ of scire facias is:

a mandate to the sheriff, which recites the occasion upon which it issues, which directs the sheriff to make known to the parties named in the writ that they must appear before the court on a given day, and which requires the defendant to appear to show cause why the plaintiff should not be permitted to take some step, usually to have advantage of a public record.
18 Standard Pennsylvania Practice 2d § 102:1 (2011) (footnotes omitted).

ed, postage prepaid, at least fifteen (15) days before the return day of the rule, a true and attested copy thereof, addressed to such person's last known post office address. The sheriff shall attach to his return, the return receipts, and if the person named in the rule has refused to accept the registered mail or cannot be found at his last known address, shall attach evidence thereof. This shall constitute sufficient service under this act.

72 P.S. § 5860.611. If efforts to personally serve the rule to show cause are unsuccessful, additional reasonable notification efforts to a party holding a property interest must be made. *In re Sale No. 10,* 801 A.2d 1280, 1288 (Pa.Cmwlth.2002).

Section 607.1 of the Law, found in the portion of the Law pertaining to upset tax sales, provides the additional notification requirements for tax sales when service is unsuccessful as follows:

> (a) When any notification of a pending tax sale or a tax sale subject to court confirmation is required to be mailed to any owner, mortgagee, lienholder or other person or entity whose property interests are likely to be significantly affected by such tax sale, and such mailed notification is either returned without the required receipted personal signature of the addressee or under other circumstances raising a significant doubt as to the actual receipt of such notification by the named addressee or is not returned or acknowledged at all, then, before the tax sale can be conducted or confirmed, the bureau must exercise reasonable efforts to discover the whereabouts of such person or entity and notify him. *The bureau's efforts shall include,* but not necessarily be restricted to, *a search of current telephone directories for the county and of the dockets and indices of the county tax assessment offices, recorder of deeds office and prothonotary's office, as well as contacts made to any apparent alternate address or telephone number which may have been written on or in the file pertinent to such property.* When such reasonable efforts have been exhausted, regardless of whether or not the notification efforts have been successful, a notation shall be placed in the property file describing the efforts made and the results thereof, and the property may be rescheduled for sale or the sale may be confirmed as provided in this act.
>
> (b) The notification efforts required by subsection (a) shall be in addition to any other notice requirements imposed by this act.

72 P.S. § 5860.607a(a)-(b) (emphasis added).[6]

■ "[A]lthough Upset Tax Sales and Judicial Tax Sales are distinct, both are 'tax sales' because they each involve the sale of property for delinquent taxes." *In re Sale No. 10,* 801 A.2d at 1283. The notice requirements of section 607.1(a) of the Law apply equally to upset tax sales and judicial tax sales. *Id.* at 1288. In any tax sale case, the Bureau has the burden of proving compliance with the statutory provisions of the Law. *In re Tax Sale of Real Property Situated in Jefferson Township,* 828 A.2d 475, 479 (Pa.Cmwlth.2003). "The purpose of Section 611 or any other notice provision of the … Law is not to strip away citizens' property rights." *Manufacturers and Traders Trust Company v. Luzerne County Tax Claim Bureau,* 56 A.3d 36, 38–39 (Pa.Cmwlth.2012). "A taxing bureau's duty to investigate such matters is confined to determining the owners of record and then to use ordinary common sense business practices to ascer-

---

6. Added by the Act of July 3, 1986, P.L. 351.

tain proper addresses where notice of the tax sale may be given." *In re Tax Claim Bureau of Schuylkill County Sale of September 29, 2000,* 798 A.2d 845, 849 (Pa. Cmwlth.2002).

█ In accordance with section 607.1(a) of the Law, the Bureau was required to make reasonable efforts to serve 777 L.L.P. with notice of the judicial tax sale. According to Emel's testimony, the Bureau attempted to personally serve 777 L.L.P. by sheriff's service, and it sent notice to 777 L.L.P. by certified mail, posted notice of the sale near the Property, and published notice of the judicial tax sale in the Legal Register and the Times Leader, a newspaper of general circulation. Although the Bureau attempted to provide 777 L.L.P. with notice of the judicial tax sale at the 72 Park Avenue and 777 South Franklin Street addresses, the Bureau was required to make reasonable efforts in accordance with section 607.1(a) of the Law, which includes performing a search of current telephone directories, searching the dockets and indices of the Recorder of Deeds office, and attempting to contact any alternate address found within the Property's file.

Based on Emel's admissions, the Bureau did not comply with the "reasonable efforts" required in section 607.1(a) of the Law. As the trial court aptly concluded, "[w]e find nothing in the testimony of … Emel to establish, or even suggest, that employing the name of the taxpayer or tax paying entity in conducting the required records search is onerous or unreasonable." (Trial court op. at 12.) The Bureau already had the proper name of 777 L.L.P. in its possession and a search using this name would not have unduly burdened the Bureau.

Mannino asserts that, pursuant to *In re Serfass,* 651 A.2d 677 (Pa.Cmwlth.1994), the notice requirements for upset tax sales are more rigorous than the notice requirements for judicial tax sales. Although Mannino correctly states the law, the facts of *In re Serfass* are distinguishable from this case. In *In re Serfass,* the tax claim bureau held an upset tax sale of a property, but the upset price was not reached. Thereafter, the tax claim bureau petitioned the common pleas court to sell the property at a judicial tax sale. The common pleas court issued a rule to show cause why the property should not be sold at a judicial tax sale, *which was personally served by the sheriff's office on the property owner.* The property owner did not appear or respond to the rule to show cause, and the property was sold at a judicial tax sale. Subsequently, the property owner filed a petition to set aside the judicial tax sale, which the common pleas court dismissed.

On appeal to this Court, the property owner argued that the tax claim bureau failed to comply with the statutory notice requirements of section 607.1 of the Law for the prior upset tax sale. We noted that the notice requirements for an upset tax sale are more rigorous than the notice requirements for a judicial tax sale. However, we determined that the tax claim bureau fully complied with the judicial tax sale notice requirements found in section 611 of the Law, because the property owner was personally served with the rule to show cause by the sheriff's office. We determined that any defects in providing notice of the upset tax sale were no longer pertinent, because proper service had been achieved with the judicial tax sale. Because the tax claim bureau properly notified the property owner of the judicial tax sale, we affirmed the trial court's order.

Unlike the property owner in *In re Serfass,* 777 L.L.P. was never served with the rule to show cause. Because 777 L.L.P. did not receive notice, the Bureau had an

obligation to make reasonable efforts to locate 777 L.L.P.'s current address. 72 P.S. § 5860.607a(a); *In re Tax Claim Bureau of Schuylkill County Sale of September 29, 2000.* The tax claim bureau in *In re Serfass* was under no such obligation because the property owner had been personally served with the rule to show cause by the sheriff's office but chose not to appear or respond. 777 L.L.P. had no such choice here, because 777 L.L.P. never received notice of the judicial tax sale of the Property. Although we distinguished between the notice requirements for an upset tax sale and a judicial tax sale in *In re Serfass,* the requirement remains for all tax sales that a tax claim bureau must make reasonable efforts to locate the property owner, which the Bureau failed to do in this case.

Mannino also cites *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), for the proposition that a governmental body need not make "extraordinary efforts" in attempting to discover the identity and the address of a property owner whose property is scheduled for a tax sale. In *Adams,* a property in Indiana was sold at a tax sale without notifying a mortgagee, because such notification was not required in accordance with an Indiana statute. After a constitutional challenge to the statute's notice requirements, an Indiana trial court upheld the statute as constitutional and the Indiana Court of Appeals affirmed. On appeal to the United States Supreme Court, the Supreme Court held that a mortgagee has a legally protected property interest and that reasonable efforts must be made to notify a mortgagee of an impending tax sale. The Supreme Court further held that these reasonable efforts are necessary to meet Due Process re-

quirements under the Fourteenth Amendment. However, the Supreme Court noted in a footnote that a governmental body does not need to undertake extraordinary efforts to "discover the identity and whereabouts of a mortgagee whose identity is not in the public record." *Id.* at 798 n. 4, 103 S.Ct. 2706. Because no notification efforts were made to the mortgagee, the Supreme Court reversed the order of the Indiana Court of Appeals and remanded for further proceedings consistent with its opinion.

Although Mannino correctly states that the Bureau did not need to make extraordinary efforts in finding 777 L.L.P.'s correct address, the law in Pennsylvania is that the Bureau must make *reasonable* efforts in locating 777 L.L.P.'s correct address. 72 P.S. § 5860.607a(a). *Adams* was not decided on whether a governmental body had to make extraordinary efforts in notifying a mortgagee of an impending tax sale. Instead, the Supreme Court in *Adams* held that reasonable efforts are required in notifying parties who have a property interest in a property subject to a tax sale, which is the case here. Thus, *Adams* lends further support to the trial court's determination.

Because the Bureau did not conduct a search of current telephone directories, did not use 777 L.L.P.'s name instead of the Property's PIN when attempting to locate 777 L.L.P., and did not thoroughly review its own file that contained the 777 South Franklin Street address, the trial court correctly concluded that the Bureau did not make reasonable efforts to locate 777 L.L.P.'s proper address as required by section 607.1(a) of the Law.

■ Accordingly, we affirm.[7]

7. Mannino also asserts that the trial court erred in not conducting an evidentiary hear-

ing. However, this argument is waived, because it was not raised before the trial court

## ORDER

AND NOW, this 30th day of March, 2015, the May 6, 2014 order of the Court of Common Pleas of Luzerne County is affirmed.

or included in Mannino's statement of errors complained of on appeal. Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement [of errors complained of on appeal] and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").

Even if Mannino had not waived the argument, it does not have any merit. Mannino and 777 L.L.P. jointly requested for the case to be decided on briefs, the deposition testimony of Emel, and the accompanying exhibits, (Trial court op. at 2), and Mannino does not identify any additional evidence to present at an evidentiary hearing to prove that reasonable efforts were made to serve 777 L.L.P. with notice of the judicial tax sale.

Mannino also cites *In re Lackawanna County Tax Claim Bureau*, 91 A.3d 316 (Pa. Cmwlth.2014), for his assertion that the trial court could not rely on Emel's deposition testimony alone to decide this case and that the case should be remanded for an evidentiary hearing. Mannino's reliance on *In re Lackawanna County Tax Claim Bureau* is misplaced. In *In re Lackawanna County Tax Claim Bureau*, the appellant filed a petition to set aside a judicial tax sale for lack of notice. The common pleas court directed that the case be decided on briefs without an evidentiary hearing, and denied the appellant's petition. In doing so, the trial court made findings of fact based on the parties' briefs and attached exhibits. On appeal to this Court, we held that "briefs are not 'facts' and … cannot serve as a basis for the trial court's decision." *Id.* at 318. Thus, we vacated the trial court's order and remanded for an evidentiary hearing.

In this case, the trial court did not make findings of fact and decide the case solely on the parties' briefs, as the common pleas court did in *In re Lackawanna County Tax Claim Bureau*, but on Emel's deposition testimony and the accompanying exhibits. Thus, the trial court did not err in not conducting an evidentiary hearing, because it had adequate facts of record on which to decide the case.